UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

AULTON DANIEL GOBEN, III,

          Plaintiff,

v.

KENT COUNTY et al.,

          Defendants.
_____/

Case No. 1:25-cv-1477

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated at the Kent County Correctional Facility in Grand Rapids, Kent County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the "County of Kent (Kent County Correctional Facility)" and as the place of employment lists "Board of Commissioners Kent County Administration Building." (ECF No. 1, PageID.2.) It is unclear whether Plaintiff is seeking to name the Board of Commissioners as a Defendant. Plaintiff also sues Kent County Sheriff Michelle LaJoye-Young in her personal and official capacities. (*Id.*)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff alleges that at some point prior to the events complained of in this case, Defendant LaJoye-Young implemented a morning cleanup policy that allowed upper and lower deck inmates out of their cell at the same time. (*Id.*, PageID.4.) Plaintiff states that upper and lower deck inmates are separated during dayroom hours for security reasons. (*Id.*) Plaintiff states that he was a lower deck inmate, and as a direct result of this policy, he was assaulted by upper deck inmates on October 31, 2024, and December 23, 2024. (*Id.*, PageID.3–4.) Plaintiff states that during both attacks, he suffered a "crushed nose." (*Id.*)

Plaintiff asserts that Defendant LaJoye-Young has constantly ignored his need to be protected from future possible assaults by allowing Classification Officer Deputy Ketchem, who is not a Defendant, to place Plaintiff back in maximum security after each attack. (*Id.*, PageID.5.) Plaintiff alleges that on December 23, 2024, Deputy Ketchem refused Plaintiff's request to be placed in protective custody until he could heal. (*Id.*) Plaintiff had a verbal altercation with Deputy Ketchem and was placed in segregation for 10 days. (*Id.*)

Plaintiff states that on May 14, 2025, he swallowed two broken pencils in front of Deputy Mahlebashian and Deputy Badillo, who are not defendants in this case. Plaintiff states that they merely turned their heads and walked away. (*Id.*, PageID.7.) That night, two female nurses who are not defendants, showed up to address injuries suffered by the inmate next door to Plaintiff. Plaintiff informed the nurses that he had swallowed broken pencils, and they asked why he had done that. Plaintiff said, "You know why." (*Id.*) The nurses then left the area, and Plaintiff observed them at the officer's desk watching video with Deputy Mahlebashian and laughing. (*Id.*)

Plaintiff states that he was seen by a female surgeon in June of 2025, who told him that based on his CT scan, she did not know how Plaintiff was breathing or how he was alive. (*Id.*,

4

PageID.4.) On July 25, 2025, Plaintiff underwent five hours of surgery to repair his damaged nose. (*Id.*)

On August 3, 2025, Medical Provider Ms. K. Gebben, who is not named as a defendant, medically cleared Plaintiff to return to maximum security. (*Id.*, PageID.5.) Plaintiff protested that he was still in pain and that his physician had told him that it would take a year to heal from his surgery. (*Id.*) Plaintiff expressed concern about what would happen if he was attacked again. (*Id.*) Ms. Gebben responded by saying that was a classification concern, not medical. (*Id.*) Plaintiff was subsequently seen by Classification Officer Deputy Ryan Edgerle, who is not named as a defendant. Deputy Edgerle told Plaintiff that he was being moved to maximum security general population and when Plaintiff asked about safety concerns, Deputy Edgerle just shrugged and said that if Plaintiff got hurt, it was on him. (*Id.*)

Plaintiff later discovered that Deputies Nielson and Lerwick, who are not parties to this action, watched the December 23, 2024 attack on Plaintiff from the control bubble but did not call for assistance to intervene in the attack, nor did they inform medical for about seven minutes. (*Id.*, PageID.6.) Instead, unnamed deputies kept opening and closing Plaintiff's cell and yelling at him to go into his room because he was bleeding "all over the place." (*Id.*) Plaintiff believes that he was treated in such a manner because he had discussed filing a civil rights action with his mother during a visit on the previous day. (*Id.*) Plaintiff states that he has made several attempts to file a grievance; the only response he has received is that the issues are not grievable. (*Id.*, PageID.7.)

Plaintiff states that Defendant LaJoye-Young has violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief. (*Id.*, PageID.9.)

5

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983

6

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff asserts that the named Defendants violated his rights by implementing a policy whereby Kent County Correctional Facility employees allow upper deck and lower deck inmates to be out of their cells at the same time during clean up period, and that this is the proximate cause of Plaintiff being assaulted by upper deck inmates on October 31, 2024, and December 23, 2024. (ECF No. 1, PageID.3–4.)

The Court notes that government officials and local governments such as a municipality or county cannot be held for the unconstitutional conduct of their subordinates or employees under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

A municipality may only be liable under section 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–37 (2010) (citing *Monell*, 436 U.S. at 694). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996), *abrogated on other grounds by Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274 (1998), *as stated in Phillips v. Anderson Cnty. Bd. of Educ.,* Case No. 3:06-CV-35, 2006 WL 3759893 (E.D. Tenn. Dec. 19, 2006); *see also Craig v. Lima City Sch. Bd. of Educ.,* 384 F. Supp. 2d 1136 (N.D. Ohio 2005). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*,

412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509.

At the dismissal stage, a Plaintiff can demonstrate a policy or custom by alleging facts that show one of the following circumstances: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Lipman*, 974 F.3d at 747 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Where the actions of a policymaking official are relied upon, it is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784–85 (1997).

In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the court looks to the allegations in plaintiff's complaint to determine whether plaintiff has alleged that the sheriff has established a policy or custom which caused plaintiff to be deprived of a constitutional right.

Plaintiff's action fails at this first step because his allegations have not identified a policy or custom which caused jail employees to act with deliberate indifference to the risk that Plaintiff

8

would be assaulted by an upper deck inmate. A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff. *Monell*, 436 U.S. at 690. Plaintiff asserts that Defendants implemented a policy which allowed upper and lower deck inmates to be out of their cells at the same time during cleaning. However, nothing in this policy envisions allowing inmates to assault each other. As noted above, Defendants "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Plaintiff's assertion that jail employees who are not parties to this action may have been deliberately indifferent to a risk that he would be assaulted by an upper deck inmate is insufficient to impose liability on the named Defendants in this case.

Plaintiff also claims that non-party employees at the Kent County Correctional Facility violated his First, Eighth, and Fourteenth Amendment rights by returning him to maximum security housing after his surgery despite his safety concerns, retaliating against him for discussing a civil rights action with his mother, failing to promptly intervene when Plaintiff was being assaulted or to contact health care in a timely manner following the assault, and ignoring his need for medical assistance after he swallowed broken pencils. However, none of these individuals are named as defendants in this action. Moreover, Plaintiff fails to allege any facts showing that the named Defendants were personally involved in the alleged misconduct of these non-party individuals. As stated above, Defendants cannot be held liable under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and

1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610-11.

A judgment consistent with this opinion will be entered.


Dated:  December 9, 2025                           /s/ Sally J. Berens
                                                   SALLY J. BERENS
                                                   United States Magistrate Judge